UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| LESTER MITCHELL, on behalf of  J.L.S., a minor child,         Plaintiff, | § § § § § | |
| v. | § § | NO. 7:05-CV-0170-AH |
| JO ANNE B. BARNHART, Commissioner of Social Security,         Defendant. | § § § § § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the written consent of the parties to proceed before a United States Magistrate Judge and the District Court's Transfer Order filed on January 9, 2006, in accordance with the provisions of 28 U.S.C. § 636(b), came on to be considered Plaintiff Lester Mitchell's action brought under 42 U.S.C. § 405(g) on behalf of J.L.S., a minor child, seeking judicial review of Defendant's denial of Plaintiff's application for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382 *et seq*.

Procedural History: On March 26, 2001, and May 24, 2002, Delia Sutton, J.L.S. Sutton's grandmother,[1] filed applications on his behalf for child's Supplemental Security Income ("SSI") benefits alleging disability due to attention deficit hyperactivity disorder, asthma, and mental difficulties related to his premature birth.[2]  (Administrative Record 115-22, 137-47 [Hereinafter

---

[1] Ms. Sutton passed away during the administrative review process. Lester Mitchell and his wife Vickie Mitchell were appointed joint managing conservators of J.L.S. on Setember 22, 2003. (Tr. 97-114.)

[2] Ms. Sutton also filed an application for SSI benefits on J.L.S.'s behalf on November 3, 1995. (Tr. 13.) The application was denied initially and on reconsideration and no administrative hearing was held because Ms. Sutton failed to appear for the hearing. (Tr. 13.)

Tr.].)

The Administrative Law Judge ("ALJ") conducted a hearing on July 23, 2004. (Tr. 22-71.) On January 28, 2005, the ALJ denied Plaintiff's request for child's SSI benefits, finding that J.L.S. was not disabled because he did not have an impairment or combination of impairments that met, medically equaled or functionally equaled the requirements of a listed impairment. (Tr. 13-20.) Plaintiff timely requested a review of the ALJ's decision by the Appeals Council, and on July 22, 2005, the Appeals Council denied the request. (Tr. 4-6.) Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed his federal complaint on September 15, 2005. Defendant filed her answer on December 1, 2005. On July 11, 2006, Plaintiff filed his brief and on September 6, 2006, Defendant filed her brief.

Standard of Review–Social Security Claims:  When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of whether: (1) the ALJ's decision is supported by substantial evidence and (2) the proper legal standard was applied. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F.2d at 1022 (quoting *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988)). Where the

2

Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971)).

Discussion:  To prevail on a claim for child's[3] SSI benefits, the claimant bears the burden of proving that he is disabled, which is defined as having "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The regulations set forth a three step process for determining whether a child is disabled.  *See* 20 C.F.R. § 416.924.  A child will be found disabled only if: (1) the child is not doing substantial gainful activity, (2) the child has a physical or mental impairment or combination of impairments that is severe, and (3) the severe impairment or combination of impairments satisfies the duration requirement and meets, medically equals, or functionally equals a listed impairment.  § 416.924(a); *see* also 20 C.F.R. Part 404, Subpt.  P., App.  1 ("The Listings").

Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities and that is done for pay for profit.  § 416.972(a)-(b).  An impairment meets the regulatory definition of "severe" unless the impairment is not "medically determinable" or is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  § 416.924(c).

The third prong of the regulatory test for disability is met if a claimant's impairment fully satisfies the criteria for any impairment listed in Appendix 1 to Subpart P of Part 404 of the

---

[3] The Social Security Act defines a child as a person "under the age of eighteen."  42 U.S.C. § 1382c(a)(3)(C)(i).

regulations. If the claimant's condition does not meet the criteria of any listing, the child's impairment may nevertheless medically equal a listing if "it is at least equal in severity and duration to the criteria of any listed impairment." § 416.926. As an alternative, the claimant's impairment may functionally equal a listing if it causes marked limitations in two of six domains of functioning listed in § 416.926a(b)(1) or an extreme limitation in one domain. § 416.926a(d).

In this case, the ALJ proceeded to step three of the sequential evaluation process and determined that J.L.S. was not disabled because he does not have an "extreme" or "marked" limitation in any area of functioning and does not have an impairment that functionally equals the severity of any listing.

J.L.S. testified on his own behalf at the administrative hearing.[4] (Tr. 25-35.) He stated that he was eight years old and lived with his aunt, uncle, a brother and two sisters. (Tr. 25-26.) He previously lived with his grandmother. (Tr. 26.) J.L.S. testified that he takes the prescription medications Depakote and Medadate and that he acts "crazy" when he does not take his medications. (Tr. 32-32A.)[5] When off his medications he hits his siblings, disobeys directions and "do[es] stuff that's not right for me." (Tr. 32A.) He said that he sometimes gets into trouble at school because he throws "fits" when he hits people and throws things. (Tr. 30.) He once was escorted home by a police officer because, "I only had one more chance around. I use it up. (Tr. 31.) When asked if he had any friends, he said that he had four neighborhood friends. (Tr. 28.) He also stated that he does not like to be around large groups of people because he gets shy and embarrassed. (Tr. 33.) When asked to list the chores that he is required to perform he listed:

---

[4] J.L.S. and Mr. Mitchell were represented by a lay advocate at the administrative hearing.

[5] This page in the transcript is not numbered. Therefore, the undersigned will refer to it as 32A.

clean his room, clean the living room, vacuum, and take out the trash. (Tr. 28.) He testified that he sometimes has trouble falling asleep. (Tr. 34.)

Vicki Mitchell, J.L.S.'s great-aunt, testified on his behalf at the administrative hearing. (Tr. 36-51.) She stated that Plaintiff had been diagnosed with ADHD and that he has trouble concentrating and staying focused. (Tr. 49, 51.) He had a history of experiencing nightmares and restless sleep and, if permitted, would stay up all night. (Tr. 40.) She described J.L.S. as a "loner" who doesn't interact with other children, breaks other children's toys when he gets angry, isolates himself when upset, and suffers from crying spells approximately two or three times per month. (Tr. 36, 44, 47.) She also said that his energy levels often fluctuate between hyper and lethargic. (Tr. 40.) When asked to compare the behavior of her biological children with J.L.S.'s behavior, she stated that J.L.S. is "slow[er]" than the other children, will often forget what he has been told to do, and often chooses not to interact with other children. (Tr. 38-39.) She also stated that J.L.S. and a friend had recently been caught starting fires. (Tr. 39.)

Ms. Mitchell testified that Plaintiff takes Albuterol for his asthma and also takes the medications Depakote and Metadate. (Tr. 36.) She acknowledged that she sometimes forgets to give J.L.S. his medications in the morning and that school personnel will call and ask her to bring the medications to the school (Tr. 37.) She testified that J.L.S. is sent to the principal's or counselor's office approximately one or two times per week. (Tr. 42.) His teachers also have reported that he often has trouble staying in his seat and likes to roam around the classroom. (Tr. 49.) She said that the school will occasionally call her to take J.L.S. home early because he was fighting with other children, throwing tantrums, or was defiant. (Tr. 37, 41.) Such calls occur even when J.L.S. is on his medications. (Tr. 37.) However, she stated that he performs well

5

academically and that his grades are "pretty good." (Tr. 49.)

Lester Mitchell, J.L.S.'s great-uncle, testified on his behalf at the administrative hearing. (Tr. 52-59.) He described J.L.S. as a violent child who destroys things and fights with other children and stated that he does not trust J.L.S. enough to leave him alone by himself. (Tr. 52, 54.) Mr. Mitchell testified that when J.L.S. first came to live with his family he would be cruel to the farm animals but that he now works well with the animals. (Tr. 53-54.) He also noted that J.L.S. has to be reminded to do his chores. (Tr. 54.)

Plaintiff posits two arguments in his brief. He first argues that the ALJ's finding that Plaintiff does not have a "marked" impairment in any domain of functioning is not supported by substantial evidence because the ALJ failed to cite evidence submitted by Plaintiff's classroom teacher and only briefly mentioned evidence submitted by his school counselor.

When addressing a child's claim for disability, the ALJ considers all relevant information including medical evidence, test scores, school records, and information from people who know the child and can provide evidence about functioning, such as the child's parents, caregivers, and teachers. § 416.924a. Evidence from medical sources is given more weight than evidence from non-medical sources; thus, teachers and school counselors are not considered sources who can provide evidence to establish a claimant's impairment. § 416.913(a), (d)(2). However, evidence from education personell may be used to establish the severity of a child's impairment and how it affects his or her level of functioning § 416.913(d)(2). "Teacher questionnaires" are specifically listed as items that an ALJ will consider when determining a child's functioning level. § 416.924a(b)(7)(ii).

The record contains Teacher Questionaires that were completed by Julia Crelia,

6

Plaintiff's classroom teacher during the 2003-2004 school year, and by Debbie Clark, the counselor at Plaintiff's elementary school. (Tr. 191-204.) Each questionnaire asks the teacher to rate the student's level of impairment in various areas of functioning on a scale of 1 to 5, with one representing "no problem" and 5 representing "a very serious problem." In the questionnaire completed by Ms. Crelia, she assigned J.L.S. a 5 in the areas of: focusing long enough to finish assigned activity or task, organizing own things or school materials, completing class/homework assignments, working at a reasonable pace/finishing on time, making and keeping friends, seeking attention appropriately, handling frustration appropriately, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, and using appropriate coping skills to meet daily demands of school environment. (Tr. 192-95.) She also assigned him a 4 in the areas of: refocusing to task when necessary, being patient when necessary, and knowing when to ask for help. She noted that the scores she assigned were based on her observation of his level of functioning when he was taking his medications. (Tr. 192-95.) She noted that J.L.S. was "very lethargic" when he was taking his medications but that when he was not taking his medications he was "mostly out of control" and needed constant supervision. (Tr. 192-93.)

     Ms. Clark assigned Plaintiff a 5 in the areas of: handling frustration appropriately, identifying and appropriately asserting emotional needs, responding appropriately to changes in own mood, and using appropriate coping skills to meet daily demands of school environment. (Tr. 202.) She assigned him a four in the areas of being patient when necessary and knowing when to ask for help. (Tr. 202.) She noted that "J.L.S. has serious concerns when not on medication" and that during the 2003-2004 school year he received his medications sporadically

7

(Tr. 203.) Additional school documents included in the record are a 6-week progress report from the 2003-2004 school year which shows that J.L.S. was on the honor role for two marking periods, a report card from the same year which reveals that he received an average conduct rating of 79 out of 100 points, and unremarkable results from a word identification screening test and a vison test. (Tr. 191-210.)

A review of the ALJ's opinion reveals that she thoroughly reviewed the medical evidence in the record, separately addressed each of the six functional areas listed in § 416.926a(b)(1) and supported her findings regarding J.L.S.'s degree of functioning in each area with numerous citations to medical evidence in the record as well as citations to the school records. As such, this is not a case where remand is clearly warranted because the ALJ failed to mention any of the school records. *See*, *e.g.*, *Turner ex rel. Turner v. Barnhart*, 377 F. Supp. 2d 1165, 1168-69 (M.D. Ala. 2005). Instead, the ALJ twice cited two documents in the school records when opining that Plaintiff needs his medications to function well in school and that he has "marked" problems with attending and completing tasks when not on his medications and residual problems when taking his medications. (Tr. 17-18.) While it may have been more preferable for the ALJ to have engaged in a more thorough discussion of the school records, it is nevertheless evident that she considered the school records when examining J.L.S.'s level of functioning.

Likewise, while the ALJ neither referred to J.L.S.'s teacher, Ms. Crelia, by name nor specifically cited the questionnaire she completed, the ALJ's references to the school records are consistent with Ms. Crelia's questionnaire, as both Ms. Crelia and the ALJ noted that J.L.S. suffered problems in several functional areas even when taking his medications (Tr. 192-95.) As such, it appears that the ALJ's failure to cite Ms. Crelia's questionnaire was an oversight rather

8

than a rejection of her opinion. *See Brown ex rel. Brown v. Commissioner of Social Sec.*, 311 F. Supp. 2d 1151, 1161 (D. Kan. 2004) (finding no error in an ALJ's failure to mention a doctor's report where the report was consistent with other evidence in the record). Therefore, Plaintiff's first point of error is without merit.

Plaintiff also argues that the ALJ erred by failing to adequately discuss the testimony of J.L.S., Mr. Mitchell and Mrs. Mitchell and by failing to make a proper credibility determination regarding all three individuals.

Social Security Ruling 96-7p (S.S.R. 1996), addresses the manner in which an ALJ should address the credibility of a individual's statements:

> [T]he adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements...It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. S.S.R. 96-7p, at *4.

Additionally, where the claimant is a child under the age of 18 who is unable to adequately describe his symptoms, S.S.R. 96-7p states that the ALJ must "accept as a statement of this symptom(s) the description given by the person most familiar with the individual, such as a parent, other relative, or guardian." S.S.R. 96-7p, at *9 n.2.

At the administrative hearing J.L.S. testified that: he engages in violent behavior, disobeys orders and does "stuff that is not right for me" when he is off his medications (Tr. 32A); sometimes gets into trouble at school because he throws "fits" where he hits people and throws things, (Tr. 30); has several friends, (Tr. 28); and sometimes has trouble sleeping, (Tr.

9

34). In the body of her opinion, the ALJ noted essentially the same facts, as she stated that: J.L.S.'s behavior takes a turn for the worse when he is off his medications, he has a reportedly hot temper and is destructive of things, and he has friends. (Tr. 15, 17-18.) After addressing the evidence in the record, she concluded in her findings that, "the child's subjective complaints are considered credible only to the extent they are supported by the evidence of record as summarized in the text of this decision." (Tr. 20.) The undersigned finds that this credibility assessment, in light of the ALJ's summary of the evidence in the body of her opinion, is appropriately supported by and linked to evidence in the record. *See*, *e.g.*, *Sherman v. Barnhart*, 192 Fed. Appx. 801, 804-05, 2006 WL 2424791, at *3 (10th Cir. 2006).

Regarding the testimony of Mr. and Mrs. Mitchell, the undersigned finds that the ALJ had no duty under SSR 96-7p to accept Mr. and Mrs. Mitchell's statements of J.L.S.'s symptoms because Plaintiff was able to testify on his own behalf. S.S.R. 96-7p at *9 n.2. Likewise, the ALJ did not err in failing to make specific credibility determinations regarding their testimony because the written decision reflects that she considered their testimony, much of which is cumulative of other evidence in the record. *See Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (declining to adopt a rule "requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony"); *Sandoval v. Barnhart*, No. 06-2066, 2006 WL 3735515, at *3 (10th Cir. Dec. 20, 2006) (citing *Adams* with approval). Therefore, Plaintiff's second point of error is also without merit.

It is therefore ordered that the decision of the Commissioner is affirmed and that Plaintiff's Social Security claim is dismissed with prejudice.

SIGNED this 9th day of January, 2007.

_____

Wm. F. Sanderson Jr.

UNITED STATES MAGISTRATE JUDGE